UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NATIONAL INSTITUTE FOR STRATEGIC
TECHNOLOGY ACQUISITION AND
COMMERCIALIZATION,

        Plaintiff,                         Case No. 11-11039
                                                  HON. GEORGE CARAM STEEH

vs.

NISSAN OF NORTH AMERICA, et al.,

        Defendants.
_____/

ORDER DENYING DEFENDANTS' RENEWED MOTION TO DISMISS [#59]

I.    Introduction

Plaintiff, National Institute for Strategic Technology Acquisition and Commercialization ("NISTAC"), filed the instant patent infringement suit on October 4, 2010 against defendants Nissan North America, Inc.; Nissan Motor Co. Ltd.; Fuji Heavy Industries, Ltd.; Subaru of America, Inc.;[1] Toyota Motor Corporation; Toyota Motor North America, Inc.; Toyota Motor Sales, U.S.A. Inc.; Toyota Motor Engineering & Manufacturing North America, Inc.; Honda Motor Co., Ltd.;[2] and American Honda Motor Co., Inc. in the United States District Court for the District of Kansas. The action was transferred to this

---

[1] On June 29, 2012, NISTAC and the Subaru defendants filed a stipulated order of dismissal as to the Subaru defendants only.

[2] On December 15, 2010, NISTAC voluntarily dismissed its claims against Honda Motor Co., Ltd., therefore the only remaining Honda defendant is American Honda Motor Company.

-1-

court after the defendants' joint motion to transfer venue was granted pursuant to 28 U.S.C. § 1404(a).

On August 23, 2011, after oral argument on defendants' motion to dismiss plaintiff's allegations of indirect infringement and vicarious liability, the court entered an order dismissing NISTAC's claim of vicarious liability without prejudice and directing NISTAC to file an amended complaint to provide the factual specificity required by Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007) and Ashcroft v. Iqbal, 129 S.Ct. 1937 (2009) in regard to its clams of contributory infringement, inducement of infringement and willful infringement.

On September 13, 2011, NISTAC filed its first amended complaint for patent infringement. Defendants now renew their motion to dismiss NISTAC's indirect infringement claims and to strike its willful infringement allegation arguing that NISTAC'S amended allegations fare no better than the allegations in its original complaint. Specifically, defendants argue that NISTAC's first amended complaint lacks allegations that defendants had knowledge of the patents at issue herein and knowledge of their infringement of said patents. Defendants argue that NISTAC's allegations require the court to draw unreasonable inferences to impart knowledge of NISTAC's patents and of defendants' infringing conduct to the defendants. NISTAC counters that its amended allegations provide the defendants sufficient notice of what they must defend against and that defendants, in bringing the present motion, are attempting to prematurely obtain summary judgment as to NISTAC's indirect and willful infringement claims while refusing

to respond to discovery requests on these issues.[3] For the reasons that follow, the court denies defendants' renewed motion to dismiss and to strike NISTAC's willful infringement allegation.

## II.    Factual Background

NISTAC is a not-for-profit, 501(c)(3) corporation that was assigned U.S. Patent Nos. 5,239,955 (the "'955 patent") and 5,313,919 (the "'919 patent") (collectively "patents-in-suit") from Ford Motor Company. The patents cover inventions related to reduced friction piston assemblies and anti-friction coatings containing solid film lubricants ("SFL"). In addition to direct infringement of the patents-in-suit, NISTAC's first amended complaint accuses all of the named defendants of willful infringement, contributory infringement and inducement of infringement.

NISTAC alleges that Ford Motor Company publicly discussed its developments with respect to friction-reducing technologies, including those contained in the patents-in-suit. For example, Ford made such disclosures at the 1999 ASME Fall conference. NISTAC maintains that the defendants learned of this cutting edge technology during the 1990s when they attended industry seminars and conferences such as the ASME conference in 1999.

On April 26, 2002, NISTAC sent a letter to Honda Motor Company ("HMC") indicating that NISTAC "ha[s] built a patent portfolio that includes technologies which may

---

[3] NISTAC served Rule 30(b)(6) notices containing willfulness and indirect infringement related deposition topics to the defendants on October 10, 2011, but the defendants have refused to supply their corporate testimony.

fit with your corporation's interest." Am. Compl., § 15, Ex. E.  The letter also stated in relevant part:

> One specific example is a group of patents donated to [NISTAC] by the Ford Motor Company that relate to a process for preparing and treating parts for SFL application, a method for spraying parts with SFLs, designs and specifications for a variety of parts that can accept SFLs and most importantly, multiple formulations to create specific SFLs.  Attached, please find a brief description of the technology included in this donation which is available for licensing, together with a list of the patents and their abstracts.

Id.  HMC responded to this letter indicating that it was not interested in reviewing the materials submitted by NISTAC, specifically stating:

> As you will kindly understand, our company is very occupied with studying and testing ideas, proposals and suggestions from our own employees for the development of new products and the improvement of existing products, including the research of applications for patents and other industrial property rights.  We are therefore incapable of carrying out studies or tests for proposals and suggestions presented to us from outside the company.
> Under such circumstances, we have decided not to take up any proposals or suggestions from outside the company.

Id.

In 2004, NISTAC contacted Sandstrom Products of Port Byron, Illinois, about licensing the patents-in-suit.  NISTAC alleges that Sandstrom Products is a supplier of pistons and/or piston coatings for defendant Nissan.  NISTAC further alleges that defendant Nissan discussed its requirements for friction reducing pistons and piston coatings with Sandstrom, which had direct knowledge of the patents-in-suit, and Sandstrom informed Nissan about the patents-in-suit.  Despite this knowledge, defendant Nissan continues to infringe the patents-in-suit.

In 2006, NISTAC placed the patents at issue along with additional patents in the Ocean Tomo auction.  A nationwide press release was issued on PR Newswire, directed

at various manufacturers. The press release, attached as exhibit I to the first amended complaint, states:

> **Solid Film Lubricant Portfolio Featured in Ocean Tomo's Spring 2006 Live Patent Auction**
>
> Potential Buyers Include Automotive and Aircraft Manufacturers, Chemical Refining Companies, Construction Companies, Shipbuilders, Medical Equipment Manufacturers, Sports Equipment Manufacturers, Agricultural Equipment Manufacturers, and Sophisticated Investors
>
> CHICAGO, March 23 /PRNewswire/–Ocean Tomo, a leading independent merchant banc focusing on intellectual property assets, is hosting the world's first, live multi-lot technology patent auction at The Ritz-Carlton in San Francisco on April 6, 2006.  They announced today that inclusion of Patent Lot 13 that pertains to Solid Film Lubricants.
> The thirty-six issued patents for sale in the April auction were originally developed by Ford Motor Company, and subsequently donated to the National Institute for Strategic Technology Acquisition and Commercialization (NISTAC), a non-profit organization affiliated with Kansas State University. The patents disclose several revolutionary lubrication techniques for internal combustion engines and drivetrains, which were developed out of a desire for oil-less engines; as well as applications which can be applied outside of the automotive industry in situations where low lubrication and high friction are a limiting factor.
> The technology is currently being used as a piston skirt coating within the automotive industry.  Because of the portfolios' robust nature, however, potential buyers of the patents range from aircraft and agricultural equipment manufacturers to orthopedics and health care equipment manufacturers.
> One of the patents in the portfolio has received an A+ rating from Ocean Tomo's PatentRatings ® software platform.

Am. Compl., Ex. I.  Additionally, Ocean Tomo created a brochure of the intellectual property that would be auctioned.  This catalog describes a wide range of patents that were discarded by major corporations and sold in sixty-eight lots, one of which pertains to the patents-in-suit.

NISTAC also alleges that it notified several automotive companies of the patents-in-suit and their potential availability at the Ocean Tomo auction.  For example, NISTAC

notified Mahle Powertrain and Federal-Mogul of the NISTAC patent portfolio and provided reasons why Mahle should license the patents or purchase them at the auction. See Am. Compl., ¶¶19-20, Ex. K. NISTAC alleges that defendant Toyota discussed its requirements for friction-reducing pistons and piston coatings with Mahle, its piston supplier, and Mahle informed Toyota of the patents-in-suit. Id. at ¶ 19. Similarly, NISTAC theorizes that Federal-Mogul, supplier of pistons and/or piston coatings for Nissan, discussed the patents-in-suit with Nissan. The patents-in-suit were eventually pulled from the Ocean Tomo auction and retained by NISTAC.

NISTAC alleges that despite knowledge of the patents-in-suit, defendants make, use or sell automobiles in the United States which contain pistons with solid film lubricant coatings on all or part of the piston which infringe the patents-in-suit. Specifically, NISTAC alleges that the Nissan defendants make, use and sell the 2008 and 2009 Titan model pickup which contains pistons with a SFL coating that infringe the patents-in-issue. Id. at ¶ 25. Toyota also manufactures and sells vehicles, including the 2005 through 2010 Corolla model; bearing engine code 2AZ-FE, which contain pistons with a SFL coating that infringe one or more patents-in-suit. Id. at ¶ 27. Similarly, the Honda defendants manufacture and sell vehicles that use the pistons containing SFL lubricant that infringes one or more of the patents-in-suit, including the 2008 through 2009 Honda Fit bearing engine code L15A. Id. at ¶ 28.

### III. Law & Analysis

#### A. Willful Infringement

Rule 12(f) of the Federal Rules of Civil Procedure states that "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or

scandalous matter." Fed. R. Civ. P. 12(f). "A motion to strike may be used to strike any part of the prayer for relief when the damages sought are not recoverable as a matter of law." Bureerong v. Uvawas, 922 F. Supp. 1450, 1479 n. 33 (C.D. Cal. 1996). "In a patent infringement case, 'upon a finding of willful infringement, a district court may, at its discretion, grant up to treble damages.'" Nichia Corp. v. Seoul Semiconductor Ltd., No. C-06-0162, 2006 WL 1233148 (N.D. Cal. May 9, 2006) (citing Odetics, Inc. v. Storage Tech. Corp., 185 F. 3d 1259, 1274 (Fed. Cir. 1999).

Willful infringement requires that the defendant (1) had knowledge of the patent, (2) had knowledge of its alleged infringement of the patent, and (3) was objectively reckless in continuing its allegedly infringing activity. See In re Seagate Tech. LLC, 497 F. 3d 1360, 1371 (Fed. Cir. 2007). "To willfully infringe a patent, the patent must exist and one must have knowledge of it." Nichia Corp, 2006 WL 1233148, at *2 (striking prayer for treble damages because the plaintiff failed to allege the defendants had knowledge of the patents-in-suit).

NISTAC argues that its first amended complaint alleges enough facts to state a plausible claim for relief as to willful infringement with respect to each defendant. Conversely, defendants maintain that the amended complaint relies on pure conjecture and implausible inferences to suggest that defendants were aware of the patents-in-suit and of their alleged infringement of those patents

Here, NISTAC's willful infringement allegation, when construed in the light most favorable to NISTAC and accepting NISTAC's factual allegations as true, sufficiently state a plausible claim for willful infringement. As to every defendant, the amended complaint alleges pre-suit knowledge of the patents-in-suit. The amended complaint alleges that

defendants attended industry seminars wherein the patents-in-suit were discussed. Further, NISTAC alleges that defendants received pre-suit knowledge of the patents-in-suit and their infringement thereof via a nationwide press release which discussed the patents-in-suit.

Further, NISTAC alleges that it informed two automotive-related suppliers about the Ocean Tomo auction and the patents-in-suit- Mahle Powertrain, defendant Toyota's alleged supplier of pistons, and Federal-Mogul, Nissan's alleged supplier of pistons. Defendants argue the sheer implausibility of an automotive supplier informing its customers that it is supplying infringing products to them. Without a fully developed factual record however, the court cannot conclude that it is unreasonable to infer that defendants Toyota and Nissan received pre-suit knowledge of the patents-in-suit from their suppliers. A reasonable inference can be made that a supplier of an accused infringing instrumentality, with direct notice of the patents-in-suit, discussed said patents and the likelihood of infringement of these patents with its customers.

It is also a reasonable inference that a Japanese parent company, Honda Motor Company, which received NISTAC's letter concerning the patents-in-suit, would communicate with its United States subsidiary, American Honda, about these patents and potential infringement thereof.

Here, NISTAC's allegations set forth facts sufficient for this court to reasonably infer that defendants were aware of the patents-in-suit and had knowledge of their infringement of said patents. Thus, the court declines to strike NISTAC's willful infringement allegation.

B. Inducement of Infringement and Contributory Infringement Claims

Federal Rule of Civil Procedure12(b)(6) allows the court to make an assessment as to whether the plaintiff has stated a claim upon which relief may be granted. *See* Fed. R. Civ. P. 12(b)(6). "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citing Conley v. Gibson, 355 U.S. 41, 47 (1957)). Even though the complaint need not contain "detailed" factual allegations, its "factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true." Ass'n of Cleveland Fire Fighters v. City of Cleveland, 502 F.3d 545, 548 (6th Cir. 2007) (quoting Bell Atlantic, 550 U.S. at 555).

The court must construe the complaint in favor of the plaintiff, accept the allegations of the complaint as true, and determine whether plaintiff's factual allegations present plausible claims. To survive a Rule 12(b)(6) motion to dismiss, plaintiff's pleading for relief must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. (citations and quotations omitted). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Id. "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." Id. "[W]here the well-pleaded

facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'show[n]'– 'that the pleader is entitled to relief.'" Id. at 1950.

Defendants argue that NISTAC has failed to state claims for contributory and induced infringement because both claims require knowledge of infringement. See Global-Tech Appliances, Inc. v. SEB S.A., 131 S.Ct. 2060, 2068 (2011) ("Induced infringement under § 271(b) requires knowledge that the induced acts constitute patent infringement.") NISTAC counters that they have properly pled a claim of inducing infringement as they have alleged defendants' pre-suit knowledge of the patents-in-suit, and despite this knowledge, defendants continue in their acts of inducement by encouraging and continuing to encourage "distributors and dealers to use, sell, and/or offer to sell the infringing products." First. Am. Compl.,¶ 37. The first amended complaint identifies the direct infringers whose acts of infringement the defendants are alleged to have induced, including motor vehicle distributors, car rental companies, car dealers and co-defendants. Id., ¶¶ 37-40. Further, the first amended complaint describes defendants' inducing conduct such as marketing efforts and encouraging distributors and dealers to use and sell the infringing products. Id., ¶¶ 37-38, 40.

Under 35 U.S.C. § 271(b), "[w]hoever actively induces infringement of a patent shall be liable as an infringer." 35 U.S.C. § 271(b). "Inducement requires a showing that the alleged inducer knew of the patent, knowingly induced the infringing acts, and possessed a specific intent to encourage another's infringement of the patent." Vita-Mix Corp. v. Basic Holding, Inc., 581 F. 3d 1317, 1328 (Fed. Cir. 2009). Therefore, "[l]iability for inducing infringement requires that the alleged infringer's actions induced infringing acts

and that he knew or should have known his actions would induce actual infringements." Mallinckrodt Inc. v. E-Z-EM, Inc., 670 F. Supp. 2d 349, 354 (D. Del. 2009) "The requirement that the alleged infringer knew or should have known his actions would induce actual infringement necessarily includes the requirement that he or she knew of the patent." Id. To state a claim for induced infringement, allegations of:

> [A]ctive steps taken to encourage direct infringement, such as advertising an infringing use or instructing how to engage in an infringing use, show an affirmative intent that the product be used to infringe, and a showing that infringement was encouraged overcomes the law's reluctance to find liability when a defendant merely sells a commercial product suitable for some lawful purpose.

DSU Med. Corp. v. JMS Co., Ltd., 471 F.3d 1293, 1306 (Fed. Cir. 2006). Therefore, "if an entity offers a product with the object promoting its use to infringe, as shown by clear expression or other affirmative steps taken to foster infringement, it is then liable for the resulting acts of infringement by third parties." Id. Liability for inducement of infringement is premised upon "purposeful, culpable expression and conduct . . . the alleged infringer must be shown to have knowingly induced infringement." Id. (internal quotations omitted).

Here, NISTAC alleges that defendants, the direct infringers, induced infringement through their marketing efforts; specifically, by encouraging the sale of their motor vehicles containing the infringing products, to distributors, car rental companies, and car dealers. As previously discussed, the court rejects defendants' argument that NISTAC's allegations fail to set forth sufficient facts demonstrating that defendants had notice of the patents-in-suit and of their infringement thereof. Accordingly, the amended complaint contains sufficient allegations to state a plausible claim of inducement of infringement.

Under 35 U.S.C. § 271(c), "[w]hoever offers to sell or sells within the United States . . . a component of a patented machine, manufacture, combination or composition . . . constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, . . . shall be liable as a contributory infringer." 35 U.S.C. § 271(c). "[I]n addition to proving an act of direct infringement, plaintiff must show that defendant 'knew that the combination for which its components were especially made was both patented and infringing'" to succeed on a claim of contributory infringement. Cross Med. Prods., Inc. v. Medtronic Sofamor Danek, Inc., 424 F. 3d 1293 (Fed. Cir. 2005); see also, Mallinckrodt, 670 F. Supp. 2d at 354-55; Lucent Techs., Inc. v. Gateway, Inc., 580 F. 3d 1301, 1320 (Fed. Cir. 2009).

NISTAC's contributory infringement claim sets forth sufficient facts supporting the inference that defendants knew "that the combination for which [their] component was especially designed was both patented and infringing." Mallinckrodt, 670 F. Supp. at 354-55. The amended complaint identifies the direct infringers as "individuals and businesses making, using, selling, offering to sell, and/or importing the infringing pistons . . . including without limitation motor vehicle distributors, car rental companies, car dealers, and co-defendants." Am. Compl., ¶ 34. Further, the amended complaint identifies the pistons and piston coatings as components that are not a staple article of commerce and not suitable for substantial non-infringing uses. Id. at ¶ 33. In accordance with notice pleading requirements, the amended complaint sets forth sufficient facts for the court to draw the reasonable inference that defendants had knowledge of the patents-in-suit and have contributed to the direct infringement of said patents.

Based on the foregoing, the court concludes that NISTAC has stated plausible claims of inducement of infringement and contributory infringement.

IV.     Conclusion

Accordingly,

Defendants' renewed motion to dismiss NISTAC's indirect infringement claims and strike its willful infringement allegation under Rules 12(b)(6) and 12(f) is DENIED. Such claims are best resolved by a Rule 56 motion for summary judgment.

SO ORDERED.

Dated:  August 21, 2012

                                        s/George Caram Steeh
                                        GEORGE CARAM STEEH
                                        UNITED STATES DISTRICT JUDGE

---

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on August 21, 2012, by electronic and/or ordinary mail and also on William H. Mandir, 2100 Pennsylvania Avenue, NW, Washington, DC 20011; and Christopher A. McElgunn, 301 N. Main, 1600 Epic Center, Wichita, KS 67202-4816.

s/Barbara Radke
Deputy Clerk